Upper Merion Area School District, Appellant *v.* Upper Merion Education Association, Appellee.

116

[redacted]

Argued April 4, 1984, before President Judge CRUMLISH, JR. and Judges MACPHAIL and COLINS, sitting as a panel of three.

[redacted]

*Francis P. O'Hara, Fox, Differ, Callahan, Ulrich & O'Hara,* for appellant.

*A. Martin Herring,* with him, *Catherine C. O'Toole,* for appellee.

OPINION BY JUDGE MACPHAIL, September 12, 1984:

The Upper Merion Area School District (District) has brought this appeal from an order of the Court of Common Pleas of Montgomery County which affirmed an arbitrator's award in a grievance proceeding. We reverse.[1]

The facts in this case are undisputed. In September, 1979, District teachers engaged in a seven-

---

[1] This case was assigned to the opinion writer on July 2, 1984.

teen day strike which was ended by a court-ordered return to work. Thereafter, the District and the Upper Merion Area Education Association (Association) engaged in collective bargaining which resulted in the ratification of an agreement on February 25, 1980. The agreement covered the period from July 1, 1979 through June 30, 1982 and included the following special provision regarding the 1979-80 work year:

The salaries appearing in Addendum A are based on the following work year:

1979-80 = 186 days
1980-81 = 187 days
1981-82 = 187 days

*For 1979-80 the work year will be reduced to 174 days.* Actual salaries paid in 1979-80 will reflect 174/186 of the appropriate salary as shown in Addendum A. (Emphasis added.)

The shortened work year was an apparent result of the strike which had occurred earlier that school year.

Section 1501 of the Public School Code of 1949[2] provides that a school year must consist of at least 180 days of instruction. Until April 29, 1980, this Court's decisions had held that Section 1501 did not require the rescheduling of instructional days lost due to a teachers' strike if such rescheduling was impossible *or impractical.* If it was impossible or impractical to provide the entire 180 days, the school board would be required to reschedule only as many days as sound educational practice required. *Commonwealth v. Mifflin County School Board,* 30 Pa. Commonwealth Ct. 213 (1977); *Commonwealth v. Leechburg Area School Board,* 19 Pa. Commonwealth

---

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §15-1501.

Ct. 140, 339 A.2d 149 (1975); *Root v. Northern Cambria School District*, 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973). On April 29, 1980, however, this Court ruled in the case of *Scanlon v. Mount Union Area Board of School Directors*, 51 Pa. Commonwealth Ct. 83, 415 A.2d 96 (1980), *aff'd*, 499 Pa. 215, 452 A.2d 1016 (1982) that the 180-day requirement is mandatory and that strike activity can justify provision of less than 180 instructional days only when it renders scheduling impossible within the statutory school year. The decision in *Mount Union*, of course, was filed several weeks before the scheduled end of the District's school year on June 13, 1980.

Following the decision in *Mount Union*, the Association notified the District Superintendent that it believed the 174-day work day provision in its collective bargaining agreement had been rendered invalid by the decision in *Mount Union*. The Association requested that additional days of instruction be scheduled that school year to comply with the 180-instructional day requirement. The District refused the request and the grievance here at issue was filed.

Following a hearing, the arbitrator ruled that our decision in *Mount Union* had, indeed, invalidated the 174-work day provision. The arbitrator noted that the District had not provided 180 days of instruction to all of its pupils and that it would not have been impossible to schedule the necessary additional days during the remaining statutory school year. The arbitrator, accordingly, determined that District teachers were entitled to pay for the number of additional work days which would have been required to meet the 180-day requirement.[3] We observe that since

---

[3] The arbitrator made his decision contingent on two conditions: 1) that our decision in *Mount Union* be upheld on appeal and 2) that the ruling by the Department of Education that the District

the District never did reschedule additional days of instruction during the 1979-80 school year, the arbitrator's decision had the effect of awarding pay for days which the teachers did *not* actually work.

In fashioning a remedy, the arbitrator adopted the following schedule for additional pay:

| Grade Level | Days of Additional Compensation |
|---|---|
| 12th Grade Teachers | 6 |
| Grade 7-11 Teachers | 10 |
| Grade 5-6 Teachers | 0 |
| Grade 3-4 Teachers | 3 |
| Grade 1-2 Teachers | 8 |

The variation in the days of compensation reflects a ruling by the Department of Education as to the number of instructional days needed for each grade to meet the 180-day requirement, taking into account days during the strike on which instruction was provided for certain grades.

Before reviewing the arbitrator's award in the instant appeal, it is necessary to delineate our standard of review. First, it is clear that the arbitrator is to determine the scope of the grievance arbitration procedure in the first instance. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982). Moreover, where the issue before the arbitrator requires contract interpretation and a determination of the intent of the parties to the collective bargaining agreement, the arbitrator's award is viewed as being based on the resolu-

---

had not provided the equivalent of 180 days of instruction to all of its pupils remain undisturbed. Both of those conditions have been satisfied.

tion of a *factual* question and must be respected by the judiciary if it draws its essence from the collective bargaining agreement. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977); *City of Lebanon v. AFL-CIO*, 36 Pa. Commonwealth Ct. 442, 388 A.2d 1116 (1978).

The issue presented to the arbitrator here, however, was whether or not our decision in *Mount Union* had invalidated the 174-day work year provision in the collective bargaining agreement. The resolution of this issue obviously required the arbitrator to interpret the *Mount Union* case itself, rather than the collective bargaining agreement, to determine its legal impact on the 174-day provision. Clearly, the intention of the parties to the collective bargaining agreement would play no role in the arbitrator's legal interpretation of *Mount Union*. The question then arises as to what our scope of review should be where an arbitrator's decision involves the purely legal, rather than factual, matter of the impact of a decision of this Court on a collective bargaining provision.

While we find no error in the arbitrator's conclusion that the issue before him was arbitrable, we think our review of the resolution of that issue must be guided by Section 7302(d)(2) of the Judicial Code, 42 Pa. C. S. §7302(d)(2) which provides as follows:

Where this paragraph is applicable *a court* in reviewing an arbitration award pursuant to this subchapter *shall*, notwithstanding any other provision of this subchapter, *modify or correct the award where the award is contrary to law* and is such that had it been a verdict of a jury the court would have entered a differ-

judgment or a judgment notwithstanding the verdict. (Emphasis added.)

Our Supreme Court has recently noted that while the presentation of a legal issue does not render arbitration improper simply because the arbitrator might fashion an invalid award, review under Section 7302 (d)(2) is available to correct legal errors on appeal. *Bald Eagle Area School District; see also City of Lebanon.*

Turning now to the arbitration decision, the arbitrator held that "the 174-day provision cannot pass muster under the current *Mt. Union* ruling, because it plainly was not *impossible* to keep the schools open for the requisite 180 days of instruction during the school year, after the *Mt. Union* ruling had been studied." (Emphasis in original.) While it is true that our decision in *Mount Union* requires that 180 *instructional days* be provided in each school year unless it is impossible to schedule that number of days within the statutory year, we would observe that the decision in *Mount Union* did not address the number of *work days* which must be scheduled for teachers. Our holding in *Mount Union* should not be construed as providing a tool for teachers to force compliance with the 180-instructional day requirement of the Code at the school district's risk, as in the instant case, of having to pay for work not actually performed. Where, as here, the school district did not provide 180 instructional days to all of its pupils, *Mount Union* does not confer a right to teacher pay for the lost days of instruction. Our decision in *Mount Union* was concerned with the pupils' right to instruction and did not create an additional right to teacher pay without regard to time actually worked. We, accordingly, conclude as a matter of law that our decision in *Mount Union* did not invalidate the 174-

work day provision in the subject collective bargaining agreement.[4] The teachers agreed to work 174 days and were paid for the time which they actually worked. *Mount Union* does not entitle them to more.[5]

We, therefore, will order that the decision of the court of common pleas be reversed.

ORDER

The order of the Court of Common Pleas of Montgomery County, dated December 16, 1982, is hereby reversed.

---

[4] Having concluded that the 174-day provision remained valid after *Mount Union*, there is no need to discuss the impact of the severability clause contained in the collective bargaining agreement. The severability clause, of course, would have relevance only if the 174-day provision had been held to be contrary to law.

[5] As noted by the Association, if the District had decided to schedule additional instructional days, the teachers could have been paid for any additional days actually worked at a per diem rate pursuant to Article XXI, Section 3 of the collective bargaining agreement.

---

DISSENTING OPINION BY JUDGE COLINS:

I must respectfully dissent. Our scope of review of an arbitrator's decision is limited. "An arbitration award must be upheld if it can in any rational way be derived from the collective bargaining agreement in light of language, context and any other indicia of the parties' intention." *Pa. State Education Association v. Appalacia Intermediate Unit 08,* Pa. , 476 A.2d 360 (1984). As reiterated by the majority, a court shall only modify such an award if it is contrary to law and if it had been a jury verdict, the court would have entered a different judgment or a judgment notwithstanding the verdict.[1]

---

[1] Section 7302(d)(2) of the Judicial Code, 42 Pa. C. S. §7302 (d)(2).

The award in this case is not illegal, but, in fact, attempts to bring the agreement between the District and the teachers within the requirements enunciated in *Scanlon v. Mount Union Area Board of Education,* 51 Pa. Commonwealth Ct. 83, 415 A.2d 96 (1980), *aff'd,* 499 Pa. 215, 452 A.2d 1016 (1982), that a school district provide 180 days of instruction per year.

The award being a reasonable one, and not illegal, should be upheld.