County in the above-captioned matter is hereby affirmed.

In the Matter of the Petition of Wellsboro Area School District. Wellsboro Area Education Association and Guy Bravo, Appellants.

In the Matter of the Petition of Wellsboro Area School District. Wellsboro Area School District, Appellant.

Argued September 15, 1983, before Judges CRAIG, BARRY and BLATT, sitting as a panel of three.

*William A. Hebe, Spencer, Gleason & Hebe,* for appellants.

*Robert F. Cox, Sr.,* with him *Robert F. Cox, Jr., Cox and Cox,* for appellee.

OPINION BY JUDGE BARRY, November 22, 1983:

This appeal results from an order of the Court of Common Pleas of Tioga County which affirmed in part and reversed in part an arbitration award.

On September 9, 1980, the Wellsboro Area School District (District) and the Wellsboro Area Education Association (Association) entered into a collective bargaining agreement covering the 1980-81 and 1981-82 school years. Guy Bravo, an employee of the District and a member of the Association was a full-time instructor of the Young Farmers Program. In January 1981, the District assigned Mr. Bravo to teach a World Cultures Class and to monitor a study hall in addition to his regular duties of instructing the Young Farmers Program. Mr. Bravo filed a grievance, alleging the assignment of the additional duties constituted a violation of various provisions of the collective bargaining agreement. The grievance eventually proceeded to arbitration. Following a hearing, the arbitrator ruled that the District had violated the collective bargaining agreement in assigning Mr. Bravo the additional duties. The arbitrator ordered the parties to meet and discuss the

amount of additional compensation to which Mr.
Bravo would be entitled. The arbitrator ordered the
additional compensation to be paid until either Mr.
Bravo's additional duties or his hours in the Young
Farmers Program were reduced. Finally, the arbi-
trator ordered the District to maintain the Young
Farmers Program.

The District appealed to the court of common
pleas. On September 13, 1982, the court affirmed that
portion of the arbitration award which held that Mr.
Bravo was entitled to additional compensation. The
court, however, vacated that portion of the award
which mandated the District to maintain the Young
Farmers Program, holding that such an award was
outside the arbitrator's authority. The District ap-
pealed from the portion of the court's order affirm-
ing part of the arbitration award and the Association
appealed from that portion which vacated the re-
mainder of the award.

Our scope of review is limited to a determination
of whether the arbitrator's award draws its essence
from the collective bargaining agreement. In *Leech-
burg Area School District v. Dale,* 492 Pa. 515, 520-21,
424 A.2d 1309, 1312-13 (1981), the court stated:

> The essence test requires a determination
> as to whether the terms of the agreement en-
> compass the subject matter of the dispute.
> Where it is determined that the subject matter
> of the dispute is encompassed within the terms
> of the agreement, the validity of the arbitra-
> tor's interpretation is not a matter of concern
> for the court.

*Accord School District of Erie v. Erie Education As-
sociation,* 67 Pa. Commonwealth Ct. 383, 447 A.2d 686
(1982). Accordingly, the District argues that the
terms of the collective bargaining agreement do not

encompass this dispute while the Association argues that they do.

The instant dispute concerns the District's assigning of Mr. Bravo to teach classes in addition to his regular duties as adviser of the Young Farmers Program. Mr. Bravo testified that the position required all of his time, yet when he informed the District of this, he was given no guidance as to where to eliminate hours. Appendix D, Paragraph 6 of the collective bargaining agreement provides, "In the event the employer contemplates the transfer of an employee, the proposed transfer will be discussed with the employee. Transfers will be made at the discretion of the employer, with the best interests of the Wellsboro Area School District in mind." Furthermore, Appendix A, Paragraph 6 provides, "Additional work beyond standard contract: Rates will be negotiated with the individual professional employee. (This does not include extra duty compensation as set forth in Appendix B)."[1] As Mr. Bravo had been a full-time instructor of the Young Farmers Program, the arbitrator viewed the assignment of additional duties as a transfer as that term is used in the collective bargaining agreement. Since the employer failed to discuss the proposed transfer with Mr. Bravo, the arbitrator found a violation of the collective bargaining agreement.

In *City of Scranton v. Shoemaker,* 59 Pa. Commonwealth Ct. 141, 144, 428 A.2d 1048, 1049 (1981), we stated, "An award draws its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context,

[1] Appendix B, titled Extra Duty Salary Schedule, sets the compensation for teacher participation in extra curricular activities, such as coaching, class advisors, marching band, etc.

and any other indicia of the parties' intention.'' The District argues that the arbitrator ignored Appendix D, Paragraph 2 of the collective bargaining agreement, which provides:

The standard school workday for all professional employees at school will be 7 1/2 hours, including a 30-minute duty free lunch period. Time of arrival and departure within the confines of the 7 1/2 hour day shall be at the discretion of the Administration. It is recognized that, additionally, professional employees normally spend several hours in work outside the standard school workday.

The District argues that the collective bargaining agreement should have been interpreted in such a way to allow the assignment of the additional duties to Mr. Bravo, based on the aforequoted language in Appendix D, Paragraph 2. We agree that such an interpretation would have been rationally derived from the agreement. The arbitrator took a different, yet reasonable, view that since Mr. Bravo's position as instructor of the Young Farmers Program had been full-time, the assignment of the extra classes constituted a transfer to additional duties, thereby entitling him to extra compensation. We believe that the terms of the collective bargaining agreement encompassed this dispute and that the arbitrator's interpretation was rationally derived therefrom, thus requiring that this portion of the award be affirmed.

The arbitrator further provided that the Young Farmers Program was to be maintained. Article IX of the collective bargaining agreement provided:

Job Security: The Pennsylvania School Code includes certain job security provisions, certification, and other regulatory provisions associated with various classes of employees.

The parties hereby aver that such provisions of the School Code including Act 97 of 1979, represent their complete agreement and that said provisions shall govern the manner in which the job security, and reduction in force practices shall be effected with respect to members of bargaining unit.

Furthermore, Section 1922 of the Public School Code of 1949[2] provides:

The board of school directors of any school district, when requested in writing by twenty (20) or more out-of-school youth or adults having an administratively feasible educational objective which has been provided for in the state plan for vocational education for which facilities are available, shall inaugurate and maintain such programs so long as enrollment conditions warrant.

The arbitrator ruled that the job security provisions contained in Article IX incorporated Section 1922 of the Public School Code into the collective bargaining agreement. If this interpretation can in any rational way be derived from the agreement, this portion of the award must also be upheld.

Both the trial court, in vacating this portion of the award, and the District rely heavily on *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977), where the court interpreted a provision in a collective bargaining agreement which was almost identical to Article IX of this agreement. There, the court interpreted the language to refer to those sections of the Public School Code dealing with the special status of professional employees, dis-

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101—27-2702.

missals, suspensions and professional evaluations. It is crucial to remember, however, that while the Supreme Court's interpretation of the provision in *Rylke* was indeed a reasonable one, the determinative question we must answer is whether this arbitrator's interpretation, though different than that of the Supreme Court, can also be classified as reasonable in that it is rationally derived from the language of the collective bargaining agreement.

In the instant case, the arbitrator was called upon to resolve a dispute concerning the assignment of extra classes to the full-time instructor of the Young Farmers Program. The arbitrator ruled that Mr. Bravo was entitled to additional compensation until the hours spent on either the Young Farmers Program or the additional duties were reduced. The District could have attempted to eliminate the Young Farmers Program altogether, thereby affecting Mr. Bravo's job security. Under these circumstances, we are both unwilling and unable to hold that the arbitrator's decision was in no rational way derived from the language of the collective bargaining agreement.

Finally, the District relies on *Neshaminy Federation of Teachers v. Neshaminy School District,* Pa. , 462 A.2d 629 (1983) for authority that the instant award did not draw its essence from the collective bargaining agreement. There, a teacher was dismissed following his conviction of a crime pursuant to Section 1122 of the Public School Code. The arbitrator ordered the teacher reinstated, ruling that the collective bargaining agreement allowed the question of the teacher's dismissal to proceed to arbitration and further holding that the teacher had been dismissed without just cause. On appeal, the Supreme Court held that an arbitrable question had not been presented. A close reading of *Neshaminy,* however,

474

shows it to be inapposite to the instant case. The collective bargaining agreement there provided, "An employee will not be disciplined, reprimanded, reduced in rank, contractual compensation or contractual advantage without just cause. Any just actions asserted by the board . . . shall be subject to the grievance procedure herein described." *Id.* at , 462 A.2d at 633. Because the parties expressly included "dismissal" in other provisions of the collective bargaining agreement, the court simply held that equating dismissal with discipline in the above quoted provision was an interpretation that could in no rational way be derived from the language of the agreement. Suffice it to say that is not so in the instant case.

Based on the foregoing, we believe the arbitrator's award must be sustained.

ORDER

AND Now, November 22, 1983, the portion of the order of the Court of Common Pleas of Tioga County, dated September 13, 1982 at No. 424 Civil Division, 1982, affirming the arbitration award is affirmed. The remaining portion of that order, which vacated part of the arbitration award is reversed and the arbitrator's award is reinstated.